1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3    Kayatana Jackson,                                   Case No.: 2:18-cv-01064-JAD-DJA

4          Plaintiff                               **Order Granting Motion for Summary Judgment**

5    v.

6    Spring Valley Health Care, LLC, doing          [ECF No. 21]
     business as Spanish Hills Wellness Suites,

7

          Defendant

8

9          Plaintiff Kayatana Jackson used to be a nurse for defendant Spring Valley Health Care,

10   LLC, doing business as Spanish Hills Wellness Suites (Spanish Hills).  She alleges that a

11   coworker sexually harassed her, and that she was terminated in retaliation for reporting the

12   harassment.  Spanish Hills moves for summary judgment on all claims.  I grant the motion

13   because no genuine issues of material fact remain as to whether Jackson was subjected to a

14   hostile work environment or whether she was terminated in retaliation for engaging in protective

15   conduct.

16                                          **Background**

17         At the time of the alleged harassment, Jackson was an Assistant Director of Nursing at

18   Spanish Hills and typically worked the day shift.[1]  Spanish Hills also employed Noghama

19   Tokunboh as a Licensed Practical Nurse working the night shift.[2]  Jackson and Tokunboh would

20

21

22

23   _____
     [1] ECF Nos. 21-2 at 5; 25-3 at 5.
     [2] ECF Nos. 21-2 at 6; 21-8 at 2.

1  see each other during the transition between shifts once or twice a week, and they became

2  friends.[3]

3      The two started having conflicts at work in June and July of 2017.  Tokunboh twice made

4  unsubstantiated claims that Jackson was trying to get her in trouble by lodging false

5  accusations.[4]  Late that July, Jackson submitted a handwritten complaint accusing Tokunboh of

6  making sexual comments and rubbing her butt against Jackson's at a nursing station.[5]  Jackson

7  claims that Tokunboh commented on the size and attractiveness of Jackson's butt and later told

8  Jackson that she wanted to have a threesome with her and Tokunboh's boyfriend.[6]  Tokunboh

9  later approached Jackson from behind at a nursing station, rubbed her butt against Jackson's for

10 less than five seconds, and remarked "[m]aybe my butt will get big like yours."[7]

11     Jackson later detailed her allegations in a meeting with Jennifer Madrid of Spanish Hills'

12 human resources department.[8]  Madrid began investigating Jackson's complaint by calling her

13 witnesses, but they didn't call her back.[9]  Madrid then asked Jackson to reach out to her

14 witnesses and encourage them to contact her.[10]  Madrid discussed the complaint with Tokunboh,

15 who flatly denied the allegations.[11]  Madrid met with Jackson again 12 days after their first

16 meeting to inform her that she found no corroborating evidence and that the investigation was

17

---

18 [3] ECF No. 21-2 at 5–7.

19 [4] ECF No. 21-28 at ¶¶ 11–12.

   [5] *Id.* at ¶ 13; ECF No. 21-13 at 2.

20 [6] ECF No. 25-3 at 7–8.

21 [7] *Id.* at 9.

   [8] ECF Nos. 21-28 at ¶ 13; 21-11 at 4.

22 [9] ECF No. 21-11 at 6.

23 [10] *Id.* at 8.

   [11] *Id.* at 12.

1 | closed.[12]  That same month, Director of Nursing Amanda Wiegand assigned Jackson to a

2 | different wing of Spanish Hills so she wouldn't have regular contact with Tokunboh.[13]  Although

3 | Tokunboh would give "mean" or "evil" looks and engaged in other harassing conduct during

4 | occasional contact in the following months,[14] Jackson told Madrid—and later testified—that

5 | Tokunboh had not engaged in any additional inappropriate sexual behavior after her complaint.[15]

6 | In October 2017, Jackson filed a discrimination charge with the Equal Employment

7 | Opportunity Commission.[16]  Spanish Hills conducted additional sexual-harassment training the

8 | next month.[17]  In December 2017, Jackson emailed Karen Miller—a higher-level Spanish Hills

9 | human resources employee—to complain about how Spanish Hills handled her complaint against

10 | Tokunboh.[18]  Jackson stated that she was still "being harassed by the individual, it is an hostile

11 | environment."[19]  Miller responded that Madrid had conducted an investigation, scheduling

12 | assignments were modified in an effort to avoid future conflicts, and that Jackson should submit

13 | any additional inappropriate behaviors for investigation.[20]

14 | In September 2017, Jackson received a "final written warning" from Wiegand for failing

15 | to follow a direct order not to discuss work-related issues with her daughter, who also worked at

16 |

17 |
---

[12] ECF No. 21-16 at 2.

[13] ECF No. 21-2 at 34.

[14] *Id.* at 46.  For example, Tokunboh threatened to put narcotics in Jackson's smoothie.  ECF No. 25-3 at 15, 19.

[15] *Id.* at 27; ECF Nos. 21-11 at 17, 21-19 at 2.

[16] ECF No. 21-21 at 2.

[17] ECF No. 21-11 at 12–13.

[18] ECF No. 21-23.

[19] *Id.*

[20] ECF No. 25-13 at 8.

Spanish Hills.[21]  In January 2018, Jackson and another employee got in verbal altercation over scheduling.[22]  Witnesses told the Spanish Hills employee investigating the incident that Jackson yelled at the other employee, who was found crying after the altercation.[23]  A few days later, another employee submitted a hand-written complaint accusing Jackson of being rude and unprofessional.[24]  During the investigation of the complaint, several other employees reported that Jackson was habitually rude and unprofessional.[25]  One employee speculated that the nurses would walk out because of Jackson's behavior.[26]  During its investigation, Spanish Hills discounted statements from another nurse and the family member of a patient.[27]  Spanish Hills terminated Jackson's employment for unprofessional conduct on January 17.[28]

## Discussion

### I.  Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[29]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[30]  If reasonable minds could differ

---

[21] ECF No. 21-20 at 2.

[22] ECF Nos. 21-24; 21-17 at 8.

[23] ECF No. 21-24.

[24] ECF No. 21-25.

[25] ECF Nos. 21-26; 21-17 at 9; 21-28 at ¶ 30.

[26] ECF No. 21-26 at 5.

[27] ECF Nos. 25-10 at 8–9, 12; 25-17.

[28] ECF No. 21-17 at 10.

[29] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[30] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1 | on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary

2 | trials when the facts are undisputed, and the case must then proceed to the trier of fact.[31]

3 |      If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue

4 | of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

5 | facts showing that there is a genuine issue for trial."[32]  "To defeat summary judgment, the

6 | nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy

7 | its burden at trial."[33]

8 | **II.     Sexual harassment**

9 |      "Title VII of the Civil Rights Act of 1964 and Nevada's anti-discrimination law prohibit

10 | sex discrimination in the workplace."[34]  "[C]ourts have read into the[se] laws a prohibition on

11 | sexual harassment."[35]  There are two varieties of sexual-harassment claims: quid pro quo and

12 | hostile work environment.[36]  To prove a sexual-harassment claim under a hostile-work-

13 | environment theory, a plaintiff must show "(1) that he or she was subjected to verbal or physical

14 | conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was

15 |

16 |

17 |

---

18 | [31] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

19 |

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

20 | [33] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

21 | [34] *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1103 (D. Nev. 2001) (citing 42 U.S.C. § 2000e-2; Nev. Rev. Stat. § 613.330).

22 | [35] *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986); *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 871 (9th Cir. 2001)).

23 | [36] *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991).  Jackson does not allege a quid pro quo claim.

1  sufficiently severe or pervasive to alter the conditions of the victim's employment as to create an

2  abusive working environment."[37]

3      The harassing conduct must be both objectively and subjectively offensive.[38]  Federal

4  courts view whether the conduct is objectively offensive from "the perspective of the reasonable

5  victim."[39]  To determine whether an environment is hostile, courts consider "the totality of the

6  circumstances, including the frequency of the discriminatory conduct; its severity; whether it is

7  physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

8  interferes with an employee's work performance."[40]  "Not every insult or harassing comment

9  will constitute a hostile work environment."[41]  But "[r]epeated derogatory or humiliating

10  statements . . . can constitute a hostile work environment."[42]

11      Although I certainly do not condone Tokunboh's conduct, Jackson has not presented

12  evidence from which a reasonable jury could find that her sexual comments and brief physical

13  contact were sufficiently severe and pervasive to create a hostile work environment.  Courts have

14  rejected hostile-work-environment claims on more severe and pervasive conduct.[43]  Jackson does

15  not identify—and I have not found—a case showing that a co-employee's scattered comments

16

17  _____

[37] *Switzer*, 174 F. Supp. 2d at 1103–04 (citing *Ellison*, 924 F.2d at 875–76).

18  [38] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

19  [39] *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000).

[40] *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quotation omitted).

20  [41] *Id.*

21  [42] *Id.*

22  [43] *See, e.g.*, *Westendorf v. W. Coast Contrs. of Nevada,* 712 F. 3d 417, 421–22 (9th Cir. 2013) (sexual comments by supervisors about "girly" work, "Double D" breasts, and orgasms); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (references to females as "castrating

23  bitches"); *Brooks v. City of San Mateo*, 229 F.3d 917, 925–26 (9th Cir. 2000) (supervisor's isolated grabbing of employee's breast).

and brief physical contact are sufficient to sustain a hostile work environment claim.[44]  I thus

grant summary judgment in favor of Spanish Hills on Jackson's hostile-work-environment claim

under federal law.[45]  And because the same standard applies to her sexual-harassment claim

under Nevada law,[46] I grant summary judgment in Spanish Hills' favor on Jackson's state-law-

harassment claim as well.

## III.     Retaliation

### A.     Causation

To prove retaliation, a plaintiff must show three things: (1) she engaged in a statutorily

protected activity, (2) she was discharged or suffered some other adverse employment decision,

and (3) there is a causal connection between the two.[47]  "An employee engages in protected

activity when she opposes an employment practice that either violates Title VII or that the

employee reasonably believes violates that law."[48]  To establish causation, the plaintiff has to

demonstrate that "the motive to discriminate was one of the employer's motives, even if the

employer also had other, lawful motives that were causative in the employer's decision."[49]  This

may be done through close temporal proximity between the protected activity and the adverse

employment action.[50]

---

[44] ECF No. 24 at 15–17.

[45] I need not, so I do not, address Spanish Hills' argument that it reasonably responded to Jackson's complaint.

[46] *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005); *see also Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980) (holding that "NRS 613.330(1) is almost identical to § 703(a)(1) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a)(1)").

[47] *O'Day v. McDonnel Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996).

[48] *Westendorf*, 712 F.3d at 422.

[49] *Univ. of Texas Sw. Medical Center v. Nassar*, 570 U.S. 338, 343 (2013).

[50] *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731–32 (9th Cir. 1986).

1      There is no bright-line rule for determining whether the timing of an adverse employment

2 action gives rise to an inference of retaliation.  In *Clark County School District v. Breeden*, the

3 United States Supreme Court recognized that "the cases that accept mere temporal proximity

4 between an employer's knowledge of protected activity and an adverse employment action as

5 sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal

6 proximity must be 'very close.'"[51]  The Court found that a 20-month gap "suggests, by itself, no

7 causality at all," and cited to other cases in which courts reached the same conclusion for three-

8 and four-month gaps.[52]  The same is true of the timing here.  Jackson submitted her hand-written

9 sexual-harassment complaint in July 2017 and her EEOC complaint that October, and she was

10 terminated three months later.  This significant lapse of time suggests "no causality at all."[53]

11      In an effort to narrow that gap, Jackson points to her December 2017 email expressing

12 her dissatisfaction with the initial sexual harassment investigation as additional protected

13 conduct.[54]  But Jackson conceded that the underlying sexual harassment had ceased after she

14 submitted her initial complaint the previous summer,[55] so she could not have "reasonably

15 believed" that the ongoing glares and other menacing conduct violated the law.[56]  Jackson also

16 points to Madrid's comment that "[t]his all needs to stop" as evidence of causation but, in

17 context, the statement refers to the protracted conflict between Jackson and Tokunboh, not

18

---

19 [51] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

20 [52] *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992)).

21 [53] *Id.*

22 [54] ECF No. 24 at 19–20.

  [55] ECF No. 21-2 at 27.

23 [56] *See Clark Cnty. Sch. Dist.*, 532 U.S. at 271 (denying retaliation claim because no reasonable person could believe that incident violated Title VII).

1 Jackson's protected activity,[57] so it does not constitute evidence of retaliatory intent either.

2 Because Jackson offers no other evidence that suggests a causal link between her protected

3 conduct and her termination, I find no genuine issue of material fact remains as to this critical

4 element of causation for her retaliation claim.

5 **B.      Legitimate non-discriminatory reason for termination**

6      Assuming that Jackson could establish causation,[58] "the burden shifts to the defendant to

7 articulate a legitimate non[-]discriminatory reason for its decision."[59]  If the defendant does so,

8 then "the plaintiff bears the ultimate burden of demonstrating that the reason was merely a

9 pretext for a discriminatory motive."[60]

10      As a separate and independent ground for summary judgment, I find that Spanish Hills

11 has articulated a non-pretextual, legitimate non-discriminatory reason for terminating Jackson.

12 The record shows that an outpouring of accounts of Jackson's rude and unprofessional behavior

13 ultimately led to her termination.[61]  Jackson argues that Spanish Hills' decision to discount

14

---

15 [57] ECF No. 25-8 at 14.

16 [58] Spanish Hills does not dispute that Jackson engaged in a protected activity in July and October of 2017 and was terminated.  ECF No. 21 at 19–20.

17 [59] *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

[60] *Id.*

18 [61] Plaintiff cites *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002), for the
19 proposition that unauthenticated documents, like the notes from Spanish Hills' investigation, cannot be considered on summary judgment.  But *Orr* was decided in 2002, and that decision
20 interpreted Federal Rule of Civil Procedure 56 before its 2010 overhaul.  The 2010 amendment "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present form
21 in order to be considered at summary judgment. *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).  The rule now mandates only that the substance of the
22 proffered evidence be admissible at trial, so Spanish Hills needed to demonstrate merely that its evidence can be presented in an admissible form. *Id.*; *see also* Fed. R. Civ. P. 56 advisory
23 comm. note to 2010 amendment.  Spanish Hills has met that burden because the notes could be admissible as a business record.  And I do not consider the note, ECF No. 25-20, that Jackson contends is erroneous.

9

1 certain witness statements shows this reason was pretextual, but "courts only require that an

2 employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even

3 baseless."[62]  Because Jackson has not identified evidence that Spanish Hills did not believe its

4 reason for terminating her, I grant summary judgment in favor of Spanish Hills on Jackson's

5 retaliation claim for this reason, as well.  I also grant summary judgment in favor of Spanish

6 Hills on Jackson's state-law retaliation claim because it is substantially similar to her federal

7 claim.[63]

8 **Conclusion**

9     Accordingly, **IT IS HEREBY ORDERED** that Spanish Hills' motion for summary

10 judgment **[ECF No. 21] is GRANTED**.  The Clerk of Court is directed to ENTER FINAL

11 JUDGMENT in favor of Spanish Hills and against Jackson on all claims and CLOSE THIS

12 CASE.

13     Dated: May 15, 2020

14 _____
   U.S. District Judge Jennifer A. Dorsey

15

16

17

18

19

20

21

22

---

23 [62] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).

   [63] *See Pope*, 114 P.3d at 280.